**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| MARIA ANN COX, | Case No. 1:18-cv-399 |
| Plaintiff, | Black, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Maria Ann Cox filed this second Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be REVERSED and REMANDED for an immediate award of benefits because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

The instant appeal is Plaintiff's second judicial appeal of an adverse disability decision.

In January 2012, Plaintiff filed for Social Security Disability Insurance (SSD) and Supplemental Security Income alleging a disability onset date of September 30, 2003 (Tr. 210-15). The Ohio Division of Disability denied Plaintiff's disability claims in May 2012 and again in February 2013 (Tr. 28). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On March 27, 2014, ALJ Susan Giuffre held a video hearing at which Plaintiff

1

appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. (Tr. 28). At this hearing, Plaintiff amended her alleged onset date to January 23, 2012, effectively withdrawing her SSD claim, and therefore only seeking Supplemental Security Income for a period beginning January 23, 2012 (Tr. 28). In May 2014, the ALJ determined that Plaintiff was not under a disability as defined by the Social Security Act (Tr. 28-47). In September 2015, the Appeals Council denied Plaintiff's Request for Review (Tr. 1), and in July 2016 the Appeals Council vacated the ALJ's decision pursuant to a remand order by the District Court (Tr. 705).

Plaintiff again appeared and testified at a hearing on February 14, 2017, where an impartial vocational expert also appeared and testified (Tr. 705). ALJ Thuy-Anh Nguyen concluded in May 2017 that Plaintiff has not been under a disability within the meaning of the Social Security Act since her alleged onset date of January 23, 2012 (Tr. 706). In April 2018, the Appeals Council upheld the ALJ's decision (Tr. 775-780). Plaintiff now seeks judicial review of the second denial of her application for benefits.

Plaintiff was 39-years-old on the date of the second ALJ's decision (Tr. 210-215) and held a high school diploma (Tr. 792). Plaintiff testified that she lives alone, takes her medication, socializes with a neighbor, and spends time reading with a friend's daughter (Tr. 710). Plaintiff's relevant past work experience included work as a laundry attendant (unskilled work ordinarily performed at medium exertion level but actually performed at light exertional level by Plaintiff), as a warehouse worker (unskilled work typically performed at medium exertional level but actually performed at light exertional level by Plaintiff), and as a fast food worker (unskilled work typically and actually performed at light exertional level) (Tr. 717).

Based upon the record and testimony presented at the hearing, the second ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease, asthma, hypertension, type II diabetes, obesity, bipolar disorder, and panic disorder." (Tr. 708). Plaintiff reported at the hearing that she was not compliant with several medical treatments, including not taking her pain medications, not taking insulin, and continuing smoking (Tr. 713). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1 (Tr. 708). The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> [T]he claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. The claimant is limited to jobs on flat, level ground. The claimant is limited to frequent exposure to extreme cold, extreme heat, and vibration. The claimant is limited to occasional exposure to pulmonary irritants, such as fumes, odors, dust, gases, and poor ventilation. The claimant is limited to work in a static, defined as very little changes in work setting, without the need for fast pace or strict production quotas. The claimant is limited to no interaction with the general public and occasional interaction with coworkers and supervisors.

(Tr. 710). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is unable to perform her past relevant work. Nonetheless, there are jobs that exist in significant numbers in the national economy that she can perform, including such jobs as routing clerk, a marking clerk, and inspector. Even if Plaintiff was further limited in time sitting and standing, Plaintiff could still perform the requirements of a mail clerk (Tr. 719). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

3

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) failing to give controlling weight to Plaintiff's treating psychiatrist when determining Plaintiff's psychiatric RFC; 2) failing to support Plaintiff's physical RFC with substantial evidence. Upon close analysis, I conclude that the ALJ erred in evaluating the opinions of Plaintiff's treating physician.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports

the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered impairment, or combination of impairments, expected to last at least twelve

5

months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's decision is Not Supported by Substantial Evidence**

Plaintiff's first assignment of error asserts that the ALJ's mental RFC assessment is not supported by substantial evidence because the ALJ failed to give controlling weight to the findings of Plaintiff's treating psychiatrist, Dr. Murthy. The undersigned agrees.

In evaluating the opinion evidence, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir. 2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

It is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record." *Blakley v. Commissioner of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004)). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 (emphasis added)." "Treating source medical opinions are still

6

entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416.927(d)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). Thus, the treating physician rule "requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'f Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

Here, the ALJ concluded that Plaintiff could perform light work that involved occasional balancing, stooping, kneeling, crouching, and crawling; occasional climbing ramps or stairs, but never climbing ladders, ropes, or scaffolds; flat level ground; frequent exposure to extreme cold, extreme heat, and vibration; and occasional exposure to pulmonary irritants, such as fumes, odors, dust, gases, and poor ventilation. (Tr. 710). Additionally, the ALJ found that Plaintiff could perform work in a static (very little changes) work setting without the need for fast pace or strict production quotas; and could have no interaction with the general public and occasional interaction with coworkers and supervisors. (Tr. 710).

In reaching this finding, the ALJ gave some weight to the opinions of the state agency doctors. (Tr. 716-17). The state agency doctors reviewed the evidence of record and opined that Plaintiff could perform a range of light work with nonexertional limitations

7

despite her impairments. (Tr. 84-110, 113-30, 130-48). In this regard, the ALJ assigned partial weight to the findings of Dr. Schmidtgossling, who performed a consultative examination in May 2012. Dr. Schmidtgossling diagnosed depression, anxiety, and panic disorder. She found that Plaintiff did not show difficulty understanding, remembering or carrying out instructions. The ALJ noted that the totality of the medical evidence of record reflects generally conservative mental health treatment and the mental evaluation findings of record do not reflect signs or findings indicative of debilitating conditions. (Tr. 715).

The ALJ "generally adopted and amplified" the limitations by the State Agency consultant, Vicki Warren, Ph.D. In May 2012, Dr. Warren reviewed the medical evidence of record including the findings of Dr. Schmidtgossling and found that Plaintiff was limited to 1-3 step work tasks, slower paced work that did not involve productions quotas, and infrequent and superficial interaction with co-workers and the public. (Tr. 84-96). The ALJ adopted Dr. Warren's restrictions and further limited Plaintiff to no fast pace or strict production quotas and reducing the frequency and interaction with others.

The ALJ also assigned "some" weight to the findings of Dr. Murthy, Plaintiff's treating physician. Notably, in 2014, Dr. Murthy opined, *inter alia*, that Plaintiff had no useful ability to adhere to a schedule, make simple work-related decisions, complete a normal work day without excessive interruptions, or deal with ordinary stress, and had serious difficulty in all other mental functional limitations. (Tr. 682-86, 1065-69). The ALJ found that Dr. Murthy's opinion was not supported or consistent with the medical evidence of record (Tr. 716, 678-81, 993-1006, 1063-64). 20 C.F.R. § 416927(c)(3)-(4).

Plaintiff argues that the ALJ's decision in this regard is not substantially supported and the ALJ erred in failing to give controlling weight to the findings of Dr. Murthy. The undersigned agrees.

In rejecting Dr. Murthy's findings, the ALJ noted that Dr. Murthy's clinical findings, along with the mental evaluation findings reported by other treating physicians, are not consistent with the severity of the limitations found by Dr. Murthy. Purportedly, in support of this contention the ALJ noted that Dr. Murthy's notes indicate that Plaintiff and her husband married on February 14, 2014. In response to this evidence, the ALJ noted that "the evidence does not reflect significant changes in her condition or an increased need for treatment during these major life events. Rather, this evidence shows that the claimant was psychotically well enough to make important decisions and exercise judgment, and that she is able to tolerate at least a basic level of change." (Tr. 716). The ALJ further determined that Dr. Murthy's treatment notes and opinions are internally inconsistent as he opined that Plaintiff has serious mental impairments across all domains of mental functioning, however, he reported that Plaintiff retained the ability to manage her own finances without supervision.

Here, the ALJ's articulated reasons for rejecting Dr. Murthy's opinions do not constitute "good reasons" for rejecting all of his findings. The undersigned does not dispute that it is the ALJ's prerogative to resolve conflicts and weigh the medical opinions of record. However, it appears in determining that Plaintiff's reported activities were inconsistent with Dr. Murthy's assessment, the ALJ, in part, impermissibly acted as his own medical expert. *See Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983); *Lund v. Weinberger*, 520 F.2d 782, 785

9

(8th Cir. 1975). While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations of the medical findings. As recognized by this Court, "[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Comm'r of Soc. Sec.*, No. 1:07–cv–51, 2008 WL 1733181, at *13 (S.D. Ohio April 14, 2008) (Beckwith, J.; Hogan, M.J.) (citing *Hall v. Celebrezze,* 314 F.2d 686, 690 (6th Cir. 1963); Clifford v. Apfel, 22.7 F.3d 863, 870 (7th Cir. 2000); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985); Sigler v. Sec'y of H.H.S., 892 F.Supp. 183, 187–88 (E.D. Mich. 1995)). *See also Rosa v. Callahan*, 168 F.3d 72, 78–79 (2nd Cir. 1999) ("[T]he ALJ cannot arbitrarily substitute his own opinion for competent medical opinion."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Here, there are no medical opinions of record that suggest Plaintiff's ability to get married, subsequently divorce or manage her finances negate her severe symptoms related to her mental impairments. In making such a finding, the ALJ improperly made his own independent medical findings. Furthermore, Plaintiff's ability to perform such limited activities is not substantial evidence that her symptoms are not disabling. See 20 C.F.R. § 404.1572(c) ("Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity."); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248–49 (6th Cir. 2007) (the minimal daily functions of driving, cleaning an apartment, caring for pets, laundry, reading, exercising and watching the news are not comparable to typical

10

work activities); C*ohen v. Sec'y Dept. Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992) (the fact that disability claimant continued ballroom dancing and attended law school during period for which she claimed disability benefits did not warrant a finding that she could maintain substantial gainful employment).

Here, the record indicates that Plaintiff treated with Dr. Murthy, a psychiatrist, for at least four years. Dr. Murthy completed two RFC opinions that would merit a disability finding. His treatment notes include clinical findings of psychomotor retardation, instability, blunt effect, and episodes of rages that resulted in criminal charges; as well as multiple prescriptions for powerful psychiatric medications. (Tr. 678-686; 993-1006). Additionally, in June 2016, Plaintiff was hospitalized for psychiatrist symptoms. (Tr. 1333-1381).

Furthermore, it is clearly established law that the opinion of a non-treating "one-shot" consultative physician or of a medical advisor cannot constitute substantial evidence to overcome the properly supported opinion of a physician who has treated a claimant over a period of years. *See Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983). As noted above, at the time of the remand hearing, Dr. Murthy had been treating Plaintiff for four years. In contrast, the state agency consultants, who the ALJ afforded deference, did not examine Plaintiff.

Additionally, it appears that the ALJ applied a more rigorous scrutiny to Dr. Murthy's opinions than to those of the nonexamining opinions. The Sixth Circuit has found that this is precisely the inverse of the analysis that the regulation requires. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013), reh'g denied (May 2, 2013). See also 20 C.F.R. § 404.1527(c); Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc.

11

Sec. Admin. July 2, 1996). As such, the ALJ's decision indicates that his assessment of the opinion evidence failed to abide by the Commissioner's regulations and therefore calls into question the ALJ's analysis. *See Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) ("An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence." (internal quotation marks omitted)).

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 100, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir.1994); *see also Abbott v. Sullivan,* 905 F.2d 918, 927 (6th Cir.1990); *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 782 (6th Cir.1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher,* 17 F.3d at 176; *see also Felisky,* 35 F.3d at 1041; *Mowery v. Heckler,* 772 F.2d 966, 973 (6th Cir.1985). Such is the case here.

Here, proof of disability *is* overwhelming and a **second** remand will serve no purpose other than delay. As fully explained above, in view of the extensive medical

record of evidence of disability, hospitalizations, and the credible and controlling findings of Dr. Murthy proof of disability is overwhelming.

**III. Conclusion and Recommendation**

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **REVERSED AND REMANDED** to the Commissioner of Social Security for an immediate award of benefits; and that this case be **CLOSED** in this Court.

<u>*s/Stephanie K. Bowman*</u>
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MARIA ANN COX,                                            Case No. 1:18-cv-399

        Plaintiff,                                    Black, J.
                                                      Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

14